McIntyre *v.* Park.

---

### LEWIS McINTYRE *vs.* JOHN Q. PARK.

A deed executed without previous authority may be orally ratified.

In an action for a breach of an agreement, the defendant was asked on cross-examination if he did not understand the plaintiff as meaning and intending to do all that was necessary on his part; and answered that he supposed the plaintiff meant to make a sure thing of it, and to do all that was necessary for him to do.  *Held*, that the question and answer were admissible.

Evidence of conversations between the parties to an action, in relation to an absent person, is admissible against one of the parties.

In an action on an agreement executed jointly in the name of the defendant and another person, and ratified by the defendant, the judge instructed the jury that the defendant would not be bound by the agreement unless the other person had ratified it before the defendant adopted it, unless the defendant knew when he adopted it that the other person's name was on it without his authority, in which case he would be estopped to say that the other person had not adopted it.  *Held*, that the absence of evidence of the other person's consent to an extension of the time for performing the contract gave the defendant no ground of exception.

Where it does not appear that a bill of exceptions reports all the evidence on the subject of damages, this court will not review the assessment made by a jury, on the ground that there appears to have been no evidence of actual or special damages.

ACTION OF CONTRACT for the non-performance of an indent-
ure between the plaintiff of the first part, and the defendant,
D. W. Castle, of Beloit, Wisconsin, and David S. Young, of
Lee Centre, New York, of the second part, dated the 18th of
March 1857, whereby the plaintiff agreed to convey to them on
the 15th of April a parcel of land in Northampton, and the
buildings thereon, used by the plaintiff for dealing in flour and
grain, and the personal property and stock used therein; and
they agreed to pay therefor the sum of $7850, $2500 on deliv-
ery of the deed, and the rest in semi-annual instalments, secured
by mortgage on the estate, and also the market price of the
stock; and it was agreed, " in case either party make default in
the conditions named in the foregoing agreement, that he will
forfeit the sum of five hundred dollars, and will pay the same
on demand to the party fulfilling the foregoing agreement."

At the trial in the court of common pleas, in Hampshire, be-
fore *Morris*, J., the plaintiff produced the above agreement, and
offered evidence tending to show that after several interviews
between the plaintiff Castle and the defendant, at which the
terms of the sale and purchase were settled, Castle (the defend-
ant being then absent) prepared the contract and signed his
own name and the names of Park and Young, and affixed
seals thereto; and deposited the paper in the Northampton
Bank. The defendant objected to the admission of the paper
in evidence, without the plaintiff's first showing Castle's au-
thority by deed to execute it for Park and Young; and further
objected that Castle's authority, if he had any, did not appear
upon the face of the instrument.

The plaintiff was permitted, against the defendant's objec-
tion, to introduce evidence that the defendant, after the instru
ment was executed, was informed of the use which Castle had
made of his name, and consented to be bound by the writing,
and from that time treated it and suffered the plaintiff to treat it
as a valid subsisting contract; that the defendant on the 15th
of April mentioned in the indenture obtained the plaintiff's con-
sent to a fortnight's extension of the time of payment, and
waived the ceremony of a tender to him (which the plaintiff was

ready and offered to make) of the evidence of property neces-
sary to complete a transfer.

The defendant offered himself as a witness, and, on cross-
examination, was asked if he did not understand the plaintiff as
meaning and intending at the bank to offer to do all that was
necessary to be done on his part. The defendant objected to
this question; but the judge allowed it to be put; and he an-
swered that he supposed the plaintiff meant to make a sure
thing of it, and to do all that was necessary for him to do.

The plaintiff also offered evidence that Young was associated
with Castle and the defendant in the purchase, and that, a day
or two after the contract was signed, he was informed by
Castle of what the latter had done, and that before the time
when the defendant consented to treat the instrument as bind-
ing on himself Young had also consented to treat it as a valid
execution of the instrument on his part. As a part of the evi-
dence showing how Young was connected with Castle and the
defendant, the plaintiff introduced evidence of conversations be-
tween himself, Castle and the defendant, in which the part that
Young was to take in the business was spoken of both by the
defendant and by Castle in his presence. The defendant ob-
jected to this evidence; but the judge admitted it.

The defendant requested the court to rule that " it was neces-
sary for the plaintiff to show that, at the time the defendant
consented to be bound by the writing, Castle had been duly au-
thorized by deed to sign and seal it in Young's name, and that
Young was then bound thereby." But the judge ruled that " the
plaintiff might show that Young had become bound by adopt-
ing the signature affixed by Castle; that if he had thus made
himself a party to the contract at or before the time when the
defendant adopted it as his contract, the defendant would be
bound thereby; otherwise not, unless the defendant, at the time
he consented to treat the writing as his contract, and permitted
the plaintiff to rely upon it as such, knew that Young's name
was on the instrument without his authority or consent, in
which case he would be estopped to say that Young was not
bound by the contract."

To prove damages, the plaintiff testified that in consequence of the agreement he reduced his stock so much between the 18th of March and the expiration of the time to which the performance was extended, that he was unprepared for the spring and summer trade, his old customers left him, and he had abandoned his usual arrangements for supply of merchandise, and was otherwise subjected to great inconvenience.  The defendant objected to this testimony, because it was provided in the agreement that the defendant, Castle and Young, were to take at market price all the plaintiff's stock on hand at the time appointed for performing the contract; but the judge admitted it as special damage.  The defendant also contended that the evidence offered not being admissible for the reason stated, and the damages claimed being too remote, the plaintiff could recover nominal damages only.  The plaintiff on the contrary contended that he was entitled to recover $500, the penal sum provided in the contract.  But the judge ruled that this sum was not in the nature of liquidated damages, and the plaintiff could only recover his actual damages ; the counsel on both sides agreed that the jury should assess the damages ; and the judge instructed the jury, in accordance with the defendant's request, " that they should allow nothing for any loss or inconvenience in consequence of the defendant's having reduced his stock ; that they should apply their good sense to the consideration of the other grounds of damage, and make no extravagant estimate of damages, and in no event could the sum exceed $500."

The jury returned a verdict of $376 for the plaintiff, and found that the defendant had waived performance of the contract on the 15th of April ; and the defendant alleged exceptions

*S. T. Spaulding*, for the defendant.

*C. Delano*, for the plaintiff.

METCALF, J.  We express no opinion on the question whether the sum of five hundred dollars, mentioned in the agreement upon which this action is brought, is a penalty or liquidated damages.  That point was ruled in the defendant's favor, and the plaintiff has not excepted to the ruling.

The evidence of the defendant's ratification or adoption of the agreement executed in his name was rightly admitted; and he, by such ratification or adoption, became answerable for a breach of that agreement.  *Merrifield* v. *Parritt*, 11 Cush. 590.   In that case, the agreement was not under seal; and the defendant contends that a sealed instrument, executed without previous authority, can be ratified only by an instrument under seal.   However this may be elsewhere, by the law of Massachusetts such instrument may be ratified by parol.   *Cady* v. *Shepherd*, 11 Pick. 400.   *Swan* v. *Stedman*, 4 Met. 548.   See also 1 Amer. Lead. Cas. (4th ed.) 450; Collyer on Part. (3d Amer. ed.) § 467; Story on Agency, (5th ed.) §§ 49, 51, 242 & notes; *McDonald* v. *Eggleston*, 26 Verm. 154.   The cases in which this doctrine has been adjudged were those in which one partner, without the previous authority of his copartners, executed a deed in the name of the firm.   But we do not perceive any reason for confining the doctrine to that class of cases.

We cannot see that the jury ought to have been instructed to find only nominal damages.   It does not appear that all the evidence as to damages is set forth in the bill of exceptions. The instructions on that subject seem to us to have been right; and if the jury assessed larger damages than the evidence legally warranted, the defendant should have moved for a new trial on that ground.   We must suppose, in this stage of the case, either that there was evidence of damages, which is not reported, or that the jury judged, from the nature of the case, what was the amount of the damages which the plaintiff had sustained — as they always do in those actions in which general damages only are claimed in the plaintiff's declaration, and in which the law has prescribed no fixed rule of damages.

All the other rulings and instructions, to which exceptions have been alleged, we think were correct; and we deem it unnecessary to do more than simply to affirm them.

*Exceptions overruled.*